

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID PRITCHARD,<br>CHRISTOPHER BLAUVELT,<br>CHERIE BROWN, and<br>GREGORY PUSATERI,<br><br>Defendants. | No. CR 14-282-R **-1,2**<br>**TRIAL**<br>R E D A C T E D<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1341: Mail Fraud;<br>18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1349: Attempted Wire<br>Fraud; 15 U.S.C. §§ 77e(a)(1)<br>and 77x: Offer and Sale of<br>Unregistered Securities; 18<br>U.S.C. § 2(a): Aiding and<br>Abetting] |

The Grand Jury charges:

COUNTS ONE THROUGH EIGHT

[18 U.S.C. §§ 1341, 2(a)]

A. INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Gigapix Studios, Inc. ("Gigapix") was a California corporation with its principal places of business in Los Angeles

and Chatsworth, California, within the Central District of California.

2. OZ3D LLC was a Nevada limited liability company with its principal places of business in North Hollywood and Chatsworth, California, within the Central District of California. OZ3D LLC was formed to raise money purportedly for the production of a movie called "OZ3D."

3. Defendant DAVID PRITCHARD ("PRITCHARD") was the President of Gigapix and a managing member of OZ3D LLC.

4. Defendant CHRISTOPHER BLAUVELT ("BLAUVELT") was the CEO of Gigapix and a managing member of OZ3D LLC.

5. Defendants CHERIE BROWN ("BROWN") and GREGORY PUSATERI ("PUSATERI") were sales "closers" for Gigapix and OZ3D LLC.

B. SCHEME TO DEFRAUD

6. Beginning in or about 2006, and continuing until at least in or about December 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7. The scheme to defraud operated, in substance, as follows:

      a.   Defendant BLAUVELT formed Gigapix in 2002 in order to produce films, television series, interactive content, and visual effects using computer generated imagery. Defendant PRITCHARD joined Gigapix in approximately June 2006 and became its president. Defendants PRITCHARD and BLAUVELT hired sales people, including defendants BROWN and PUSATERI, to raise money from individuals across the United States via "cold-call" telemarketing and offering investments in Gigapix prior to the company going public via an Initial Public Offering ("IPO") or reverse merger with a public company.

      b.   Starting in or about 2008, while continuing to offer pre-IPO investments in Gigapix, defendants PRITCHARD and BLAUVELT began raising money for the purpose of producing and marketing an independent film called "OZ3D." To this end, defendant BLAUVELT established the company OZ3D LLC.

      c.   Starting in or about 2010, defendant PRITCHARD and others established a company called Gigapix Releasing, supposedly to distribute "OZ3D" and other films produced by third parties.

      d.   In order to raise money from investors for Gigapix and OZ3D LLC, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI used "fronters" to cold-call individuals from "lead lists" purchased by Gigapix or generated by a related entity called Survey Says. As the defendants knew, the fronters used scripts to follow during these cold-calls touting Gigapix and OZ3D LLC and promising high returns from investments therein. When an individual indicated an interest in investing in Gigapix or OZ3D LLC, he or she was sent a package of sales literature

3

via the United States mails and/or private or commercial carriers operating in interstate commerce, such as FedEx Corporation ("FedEx").  The packages typically included subscription agreements, private placement memoranda, correspondence, and sales literature that, as defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI then well knew, contained material misrepresentations, half-truths, and concealed material facts.  The fronters then turned over the solicitation of individuals who expressed interest in the investment to a "closer," such as defendants BROWN and PUSATERI.

   e. Fronters and closers made material misrepresentations, told material half-truths, and concealed material facts when speaking to investors.  As further described below, these misrepresentations, half-truths, and concealed facts related to, among other things, the percentage or amount of investor money that would be spent on the production and promotion of movies and televisions shows (as opposed to the cost of raising money from investors and payments to Gigapix and OZ3D LLC insiders), the anticipated amount and timing of returns to the investors, the riskiness of the investment, and the success of the prior Gigapix projects.

   f. Victim investors who invested in Gigapix and OZ3D LLC completed and returned, via the United States mail and/or private or commercial carrier operating in interstate commerce, the subscription agreement and payment, usually in the form of a check.

   g. Defendants PRITCHARD and BLAUVELT spent investor money on salaries for themselves and to pay their personal

4

expenses, employee salaries, and commissions of approximately 20 percent to defendants BROWN and PUSATERI, and others. Investor funds were also used to purchase "lead lists" to be used by fronters to solicit victims and other costs related to soliciting money from investors, such as rent of a sales office, printing and publishing costs for the sales literature sent to potential victim investors, and telephone bills. Contrary to what investors were told, less than 20 percent of investor money was spent on production of animated movies or television, including "OZ3D."

       h.   Through this scheme to defraud, defendants PRITCHARD, BLAUVELT, BROWN, PUSATERI, and their co-schemers raised over $22.6 million from approximately 750 investors by the use of false and misleading representations and the concealment of material facts. The investors lost virtually all the money they invested in Gigapix and OZ3D LLC.

       8.   The investments in Gigapix and OZ3D LLC sold by the defendants to investors consisted of stock and partnership interests that were not registered with the United States Securities and Exchange Commission (the "SEC") in that no registration statements or prospectuses for the stock or partnership interests were ever filed with the SEC or declared "effective" by the SEC, and no exemption to the registration requirements applied. As a result, as defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI then knew, the offer and sale of the stock and partnership interests to investors nationwide violated the federal securities laws.

9. Gigapix and OZ3D LLC, as well as defendant BLAUVELT and in one instance, defendant PUSATERI, were the subject of several State regulatory actions concerning securities rules, as listed below, the existence of which, in many instances, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI failed to disclose to investors and potential investors:

    a. On April 24, 2005, the Wisconsin Division of Securities issued an Order of Prohibition in which Gigapix and defendant BLAUVELT were prohibited from employing an agent to represent them in Wisconsin in the sale of securities, unless the agent was licensed or excepted from the licensing requirement.

    b. On September 2, 2008, the Oregon Division of Finance and Corporate Securities issued an Order to Cease and Desist, Conditioning of Exemptions, Order Assessing Civil Penalty and Consent to Entry of Order against Gigapix and defendant BLAUVELT, in connection with the unlawful sale of unregistered securities in Oregon.

    c. On May 13, 2009, the California Department of Corporations entered a Stipulation to Final Order with Gigapix, OZ3D LLC, and defendants BLAUVELT and PUSATERI in which Gigapix, OZ3D LLC, and defendants BLAUVELT and PUSATERI agreed to desist and refrain from offering and selling unqualified, non-exempt securities and from misrepresenting and omitting material facts in connection with the offer and sale of securities.

    d. On July 1, 2010, the Alabama Securities Division issued an Administrative Order against Gigapix and defendant

1  BLAUVELT for offering and selling unregistered securities in
2  Alabama.
3           e.   On October 14, 2010, the State of Washington
4  Department of Financial Institutions Securities Division filed a
5  Statement of Charges and Notice of Intent to Enter Order to
6  Cease and Desist, Impose Fines, and Charge Costs against Gigapix
7  and defendant BLAUVELT, alleging that salespeople at Gigapix had
8  misleadingly told one potential investor that an investment in
9  Gigapix was "like getting in on the ground floor of a company
10 like Pixar," without explaining that "there could be no
11 assurance that Gigapix would have similar success," and had told
12 another potential investor that he would make "good money" on
13 his investment of $1 per unit when Gigapix went public at $20
14 per unit and that the "worst he could do on the investment was
15 to get his money back when Gigapix went public."
16 C.   THE MISREPRESENTATIONS
17      10.  In furtherance of the scheme to defraud, defendants
18 PRITCHARD, BLAUVELT, BROWN, and PUSATERI, and others known and
19 unknown to the Grand Jury, knowingly made and caused to be made
20 the following material false and fraudulent pretenses,
21 representations, and promises, among others, to victim
22 investors:
23           a.   That Gigapix was a financially successful
24 company;
25           b.   That Gigapix was comparable to Pixar;
26           c.   That investors in Gigapix and OZ3D LLC would
27 receive high returns on their investments;
28

      d.    That the investments into Gigapix and OZ3D LLC carried little or no risk;

      e.    That there was an urgency to invest in Gigapix and OZ3D LLC because the opportunity to invest would soon be closing;

      f.    That a minimum of 65 percent of investor money in OZ3D LLC would be used to produce and distribute the movie "OZ3D";

      g.    That only up to 10 percent of investor money in Gigapix and 20 percent of investor money in OZ3D LLC would be used to pay commissions and finder's fees, or alternatively, that salespeople selling units in Gigapix and OZ3D LLC were not earning commissions, but rather would make money from the profits of the companies;

      h.    That Gigapix would go public within a short period of time and that active steps were being taken to accomplish this goal, such as registration with the SEC and a financial audit by an outside company;

      i.    That production on "OZ3D" had begun or was to begin imminently; and

      j.    That investors would begin to receive returns on their investment soon after investing, often within 18 months.

11.    In truth and in fact, as defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI, and their co-schemers then well knew:

      a.    Gigapix was struggling financially and had not been profitable to investors;

  b. There was no assurance that Gigapix would be anything like Pixar;

  c. There was very little chance that investors in Gigapix and OZ3D LLC would receive high returns on their investments;

  d. The investments into Gigapix and OZ3D LLC were highly risky;

  e. There was no pressure to invest quickly, as the investments into Gigapix and OZ3D LLC were not closing;

  f. Only a small percentage of investor money in OZ3D LLC would be used to produce and distribute the movie "OZ3D";

  g. Investor money would be used to pay high commissions and overhead;

  h. Only preliminary steps were ever taken for Gigapix to go public;

  i. Only preliminary steps were ever taken to produce "OZ3D"; and

  j. Because Gigapix had taken no significant steps to go public and only preliminary steps to produce OZ3D LLC, investors would not begin to receive returns on their investment soon after investing.

D. <u>CONCEALMENT OF MATERIAL FACTS</u>

  12. In addition, defendants PRITCHARD, BLAUVELT, BROWN, PUSATERI, and their co-schemers knowingly concealed and caused others to conceal the following material facts, among others, from investors and potential investors:

  a. That none of the past projects of Gigapix were profitable for the company's investors;

      b.    That investments into Gigapix and OZ3D LLC were highly risky;

      c.    That a substantial portion of victim money invested in Gigapix and OZ3D LLC was used to pay undisclosed commissions to salespersons, telemarketing expenses, overhead, and personal expenses of defendants PRITCHARD and BLAUVELT;

      d.    That only approximately 19.6 percent of investor money in Gigapix was used for the actual production and promotion of movie and television content that would add to the value of Gigapix stock;

      e.    That less than five percent of investor money in OZ3D LLC was used for the actual production and promotion of "OZ3D";

      f.    That only preliminary steps were ever taken for Gigapix to go public;

      g.    That only preliminary steps were ever taken to produce "OZ3D"; and

      h.    That Gigapix, OZ3D LLC, and some of their representatives were the subject of regulatory actions in several states.

E.    <u>USE OF THE MAIL</u>

    13.    On or about the dates set forth below, within the Central District of California and elsewhere, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI, aiding and abetting each other, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal

Service and to be deposited with and to be delivered by commercial interstate carrier, according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| ONE | 06/10/2009 | Letter signed by defendants PRITCHARD and BLAUVELT from Gigapix Studios in Los Angeles, California, to victim D.A. in Andrews, North Carolina |
| TWO | 06/10/2009 | Letter signed by defendants PRITCHARD and BLAUVELT from Gigapix Studios in Los Angeles, California, to victim J.G. in Chandler, Arizona |
| THREE | 07/08/2009 | Letter containing a check sent from victims L.H. and J.H. in Clearmont, Wyoming, to OZ3D LLC in Los Angeles, California |
| FOUR | 08/05/2009 | Letter containing a confirmation of membership interest certificate sent from OZ3D LLC in Los Angeles, California, to victims L.H. and J.H. in Clearmont, Wyoming |
| FIVE | 12/11/2009 | Letter containing a check sent from victim J.G. in Chandler, Arizona, to OZ3D LLC in Los Angeles, California |
| SIX | 12/01/2010 | Letter signed by defendant BLAUVELT from Gigapix Studios in Los Angeles, California, to victim D.A. in Andrews, North Carolina |
| SEVEN | 05/24/2011 | Letter signed by defendant PRITCHARD from OZ3D LLC in Los Angeles, California, to victim J.G. in Chandler, Arizona |
| EIGHT | 11/25/2011 | Letter signed by defendant BLAUVELT from Gigapix Studios in Los Angeles, California, to victim J.G. in Chandler, Arizona |

COUNTS NINE THROUGH TWELVE

[18 U.S.C. §§ 1343, 1349, 2(a)]

14. The Grand Jury hereby realleges and incorporates by reference paragraphs one through twelve of this Indictment as if fully set forth herein.

E. USE OF INTERSTATE WIRE COMMUNICATIONS

15. On or about the dates set forth below, within the Central District of California and elsewhere, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI, aiding and abetting each other, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | WIRE |
| --- | --- | --- |
| NINE | 07/01/2009 | Telephone call between defendant BLAUVELT in Los Angeles, California, and victim D.A. in Andrews, North Carolina |
| TEN | 07/01/2009 | Telephone call between defendant PUSATERI, in Los Angeles, California, and victim L.H. in Clearmont, Wyoming |
| ELEVEN | 12/01/2009 | Telephone call between defendant BROWN in Los Angeles, California, and victim J.G. in Chandler, Arizona |
| TWELVE | 01/01/2010 | Telephone call between defendant PRITCHARD in Los Angeles, California, and victim J.G. in Chandler, Arizona |

COUNTS THIRTEEN THROUGH FIFTEEN

[15 U.S.C. §§ 77e(a)(1) and 77x; 18 U.S.C. § 2]

16. The Grand Jury hereby realleges and incorporates by reference paragraphs one through twelve of this Indictment as if fully set forth herein.

17. On or about the following dates, in the Central District of California, and elsewhere, defendants PRITCHARD, BLAUVELT, BROWN, and PUSATERI, directly and indirectly, aided and abetted by each other, together with others known and unknown to the Grand Jury, willfully used and caused to be used the means and instruments of transportation and communication in interstate commerce and the mails to sell the following securities of Gigapix and OZ3D LLC when no registration statements were filed with the SEC and in effect as to such securities:

| COUNT | DATE | SALE OF UNREGISTERED SECURITIES |
|---|---|---|
| THIRTEEN | 08/05/2009 | $10,000 membership interest in OZ3D LLC to victims D.A. and C.A. |
| FOURTEEN | 08/05/2009 | $10,000 membership interest in OZ3D LLC to victims L.H. and J.H. |
| FIFTEEN | 12/31/2009 | $10,000 membership interest in OZ3D LLC to victim J.G. |

```
 1
 2                                      A TRUE BILL
 3
 4                                      _____
                                        Foreperson
 5
   ANDRÉ BIROTTE JR.
 6 United States Attorney
 7
 8
   ROBERT E. DUGDALE
 9 Assistant United States Attorney
   Chief, Criminal Division
10
   RICHARD E. ROBINSON
11 Assistant United States Attorney
   Chief, Major Frauds Section
12
   STEPHEN A. CAZARES
13 Assistant United States Attorney
   Deputy Chief, Major Frauds Section
14
   ELLYN MARCUS LINDSAY
15 Assistant United States Attorney
   Major Frauds Section
16
17
18
19
20
21
22
23
24
25
26
27
28
```