```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3            HONORABLE MANUEL L. REAL, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,         )
                                       )
 6                   Plaintiff,        )
                                       )
 7      vs.                            )   Case No. CR 14-282 R
                                       )
 8   DAVID PRITCHARD and               )
     CHRISTOPHER JAMES BLAUVELT,       )
 9                                     )
                     Defendants.       )
10   _____)

11

12              REPORTER'S PARTIAL TRANSCRIPT OF
                       TRIAL PROCEEDINGS
13              TESTIMONY OF LINDA HAMPSHIRE
                 WEDNESDAY, OCTOBER 15, 2014
14                       11:28 A.M.
                    LOS ANGELES, CALIFORNIA
15

16

17

18

19

20

21

22   _____

23        MYRA L. PONCE, CSR NO. 11544, RPR, RMR, CRR
                FEDERAL OFFICIAL COURT REPORTER
24            312 NORTH SPRING STREET, ROOM 430
                LOS ANGELES, CALIFORNIA 90012
25                     (213) 894-2305
```

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

    STEPHANIE YONEKURA
    Acting United States Attorney
    BY:  ELLYN M. LINDSAY
    BY:  BYRON J. MCLAIN
       Assistant United States Attorneys
    United States Courthouse
    312 North Spring Street
    Los Angeles, California  90012

**FOR THE DEFENDANT DAVID PRITCHARD:**

    LAW OFFICES OF MICHAEL W. EMMICK
    BY:  MICHAEL W. EMMICK
       Attorney at Law
    3701 Highland Avenue, Suite 305
    Manhattan Beach, California  90266

**FOR THE DEFENDANT CHRISTOPHER JAMES BLAUVELT:**

    LAW OFFICES OF STEPHANIE AMES
    BY:  STEPHANIE AMES
       Attorney at Law
    12100 Wilshire Boulevard, Suite 800
    Los Angeles, California  90025

1 **INDEX OF WITNESSES**

2

3 PLAINTIFF'S WITNESSES                                             PAGE

4 HAMPSHIRE, Linda

5     Direct Examination by Ms. Lindsay                               6
      Cross-Examination by Ms. Ames                                  18
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**INDEX OF EXHIBITS**

| NUMBER | DESCRIPTION | FOR IDENTIFICATION PG. | FOR EVIDENCE PG. |
|---|---|---|---|
| 104 - | Check for $10,000 from Jerry and Linda Hampshire dated 10/29/2008 | 9 | 10 |
| 105 - | Check for $10,000 from Jerry and Linda Hampshire dated 7/8/2009 | 14 | 15 |
| 106 - | *OZ3D*, LLC, confirmation of membership dated 12/22/2008 and 8/5/2009 | 15 | 16 |
| 107 - | GigaPix stock certificates of Jerry and Linda Hampshire | 16 | 17 |
| 108 - | Letter from GigaPix to Jerry and Linda Hampshire | 17 | 17 |

```
 1         LOS ANGELES, CALIFORNIA; WEDNESDAY, OCTOBER 15, 2014
 2                            11:28 A.M.
 3                             -oOo-
 4              (The following is a partial transcript
 5               of the day's trial proceedings.)
 6              (In the presence of the jury.)
 7              THE COURT:  The jurors are all present and in their
 8  proper places.  The defendants are present with their counsel.
 9       Call your next witness.
10              MS. LINDSAY:  Linda Hampshire.
11              THE COURTROOM DEPUTY:  Please raise your right hand.
12       Do you solemnly swear that the testimony you shall give in
13  the cause now before this Court shall be the truth, the whole
14  truth, and nothing but the truth, so help you God?
15              THE WITNESS:  I do.
16       **LINDA SUZAN HAMPSHIRE, PLAINTIFF'S WITNESS, WAS SWORN**
17              THE COURTROOM DEPUTY:  Thank you.  Please take a
18  seat.
19       Please state your full and true name for the record and
20  spell your last name.
21              THE WITNESS:  Linda Suzan, S-u-z-a-n, Hampshire,
22  H-a-m-p-s-h-i-r-e.
23              MS. LINDSAY:  May I begin, Your Honor?
24              THE COURT:  Yes.
25  ///
```

```
 1                    DIRECT EXAMINATION
 2   BY MS. LINDSAY:
 3   Q    Ms. Hampshire, how are you currently employed?
 4   A    At present, I take care of my mother, Alzheimer's patient.
 5   I -- my sisters --
 6   Q    How have you been employed in your past?
 7   A    My occupation, I'm a dental hygienist.  And I worked many
 8   years in an orthodontics practice.  And after that, I went to a
 9   medical center and was a receptionist, billing, coding,
10   insurance filing.  Then I went -- worked a couple of years at
11   the bank, and now I take care of my mom.
12   Q    Where do you live?
13   A    My husband and I have a ranch, cattle ranch in Wyoming.
14   Q    What city is that?
15   A    Arvada.
16   Q    Well, not a city.
17   A    Not a city, no.  Just a post office.
18   Q    Did you become an investor in GigaPix?
19   A    Yes, we did.
20   Q    Prior to that, what kind of investment history did you
21   have?
22   A    Very little.  Very little.
23   Q    How did you learn of GigaPix?
24   A    A couple of friends of ours had heard about it and thought
25   it was an opportunity.  They wanted us to get in with them
```

```
1   and --
2   Q    In about May of 2008, did you receive a telephone call
3   from GigaPix?
4   A    We did.
5   Q    Who called you?
6   A    Greg Pusateri.
7   Q    Did he -- what did he tell you about GigaPix?
8   A    Well, that they were going to make a movie.  They were in
9   the animation division, I believe.  They were making a movie, a
10  remake of the Wizard of Oz.
11  Q    Did you talk about their wholesome Christian values of the
12  company?
13  A    Oh, yes.  It was all going to be family entertainment,
14  family friendly, talked to us a lot about our -- our family
15  values and the good Christian values that we were -- we'd be
16  proud of the work they were doing.
17  Q    Did he tell you what was happening with this Oz movie,
18  like what stage they were at?
19  A    They had hired people.  And I guess I don't really know.
20  It was in early productions but --
21  Q    Did he tell you when the movie would come out?
22  A    We understood within about a year.
23  Q    Did he tell you about any particular actors who had been
24  hired as voices on this movie?
25  A    Um, later on, yeah, there was kind of a buzz because he
```

```
 1  had told -- told us that they had hired Michael J. Fox as one
 2  of the voices.
 3  Q    Did he discuss risk with you on this investment or the
 4  opposite?
 5  A    Well, kind of the opposite.  I was pretty skeptical about
 6  it.  And when I was asking questions, my husband would call and
 7  talk to Greg.  And Greg said, well, he'd put in a lot of his
 8  money and nobody was going to lose money on it, that --
 9  Q    Was it important to you that it was not a risky
10  investment?
11  A    Well, yes.  We didn't have money to lose on it.
12  Q    Did you receive anything in the mail from GigaPix?
13  A    Yes.  We received a folder, um, with a lot of promotion
14  kind of stuff in it, like --
15           MS. LINDSAY:  I'd ask that the witness take a look
16  at Exhibit 23.  Actually, I think 23 -- the 23 I'm looking at
17  is -- it's in the separate --
18  BY MS. LINDSAY:
19  Q    Did you receive the glossy folder?
20  A    Yes.
21  Q    Maybe I'll just show you here.
22       And if you could look at that, did you receive something
23  like that in the mail?
24  A    Yes.  Yes.  Yes.
25  Q    And opening that up and looking in it, do you see a
```

1  booklet called a Private Placement Memorandum?
2  A    Yes.  Yes.
3  Q    Did you receive something like that?
4  A    Um, I think we did.  Yes.
5  Q    Did you know what a Private Placement Memorandum was?
6  A    No.  No, no.
7  Q    Did you read it?
8  A    Well, I read some of it, yes.
9  Q    Did you understand it?
10 A    No, I did not.
11 Q    Did you talk to Mr. Pusateri about it?
12 A    Um, I didn't.  I'm sure Jerry did.
13 Q    Was that an important document, as far as you knew, to
14 your investing in GigaPix?
15 A    Um --
16 Q    Or was it more what Mr. Pusateri was telling you?
17 A    I don't really remember this particular one.
18 Q    Okay.
19 A    But --
20 Q    I'd like you to take a look at what's been marked for
21 identification as Government's Exhibit 104.
22             THE COURTROOM DEPUTY:  Exhibit 104 is identified and
23 placed before the witness.
24             (Exhibit 104 for identification.)
25 ///

```
 1  BY MS. LINDSAY:
 2  Q    Are these checks that you sent to GigaPix?
 3  A    Oh, is there -- yes.
 4            MS. LINDSAY:  I move in 104, Your Honor.
 5            THE COURT:  Any objection?
 6            MR. EMMICK:  No objection.
 7            MS. AMES:  No objection.
 8            THE COURT:  104 in evidence.
 9            (Exhibit 104 received into evidence.)
10            MS. LINDSAY:  If we could look at page 2 of 104.
11            THE WITNESS:  Okay.
12  BY MS. LINDSAY:
13  Q    Did you decide to invest in OZ3D and GigaPix?
14  A    Yes, we did.
15  Q    And looking at this check here -- and you can look on your
16  monitor if you want.
17  A    Oh.
18  Q    Is that the check that you wrote for your first
19  investment?
20  A    Yes, it is.
21  Q    Who is Penny McClurg?
22  A    She's one of our friends that brought this to our
23  attention, wanted us to invest.
24  Q    And why did you write her name on there?  Why did you
25  write the check to her?
```

1  A     Well, it was supposed to be $10,000, and we didn't have
2  $10,000.  So we wrote it for 5- and she put 5- with it, so we
3  got the one unit.
4  Q     Did you tell Mr. Pusateri about your financial situation?
5  A     Well, yes.  That was a big -- that was a large amount.
6  Q     For you?
7  A     Yes.
8  Q     Did he ever tell you anything about you having to be worth
9  a million dollars in order to invest?
10 A     No.
11 Q     At the time were you worth a million dollars?
12 A     No.  No.
13 Q     Now, if you could look at Exhibit 35 and -- well, you know
14 what?  I think that's in evidence.  So why don't we display it,
15 35, page 7.
16       Do you recall filling out anything like this in connection
17 with your investment?
18 A     I -- I don't remember.
19 Q     If we could look at page 9 of the exhibit.
20 A     Okay.
21 Q     And down at the bottom, that last question there.  Do you
22 remember having to check that you were worth a million dollars?
23 A     No.  No.
24 Q     So nobody ever asked you to fill this document out?
25 A     We couldn't have stated that we were worth a million

1  dollars.
2  Q    But nobody asked you to fill out a document like this?
3  A    Oh, no.  No.  I don't think so.
4  Q    Okay.  Did Mr. Pusateri send you materials for *OZ3D* as
5  well as for GigaPix?
6  A    Um, we got letters, but we didn't ever get, like, a big --
7  you know, like the first one we got was pretty elaborate.  We
8  didn't ever get anything like that the second time.
9  Q    Okay.  Did you invest in *OZ3D*?
10 A    We did.
11 Q    And if you look at Exhibit 104, page 1 -- and I think we
12 can bring that up on the monitor for you.  I think I moved that
13 into evidence.  I hope so.  Yeah?  Okay.  Good.
14      Does that represent your second investment?
15 A    Yes.
16 Q    Did -- after this, did Mr. Pusateri ask you to invest more
17 money, additional money in *OZ3D*?
18 A    Yes, he did.
19 Q    Was that in approximately July of 2009?
20 A    Yes, it was.
21 Q    Approximately -- and what city and state were you living
22 in or --
23 A    Near Arvada, Wyoming.
24 Q    Rural area.
25      At that time did you have a discussion with Mr. Pusateri

1  about your 401(k)?
2  A    Yes, I did.  He had started calling again and he talked to
3  my husband a couple of times.  And then one day he called
4  specifically for me and asked -- told me that, you know, with
5  this new offering, that we really needed to get into that, that
6  it was going to be a good investment and I should consider
7  taking money out of my 401(k) to put into this investment.
8       And I didn't know really what to say.  I wasn't sure
9  how -- if he knew I had one or if he was looking for
10 information or whatever.  But I just said, "If I have a
11 retirement plan and what's in it, it's none of your business."
12      And he said, "Well, it is my business.  I'm your financial
13 advisor."
14      And I said, "Since when?"
15      And he said, "Since you put money into the project.  And
16 as your investment counselor, I strongly advise you to take
17 money from that account and put it into this.  I can make you a
18 lot more money.  And if you leave it in your retirement, you
19 won't have anything."
20      And things were going down drastically about that time.
21 But I just said, "That's outrageous.  I'm not taking money out
22 of my retirement plan."  And we hadn't gotten any money back
23 yet on our other two checks we'd written.  And I just said,
24 "No.  Absolutely no."
25      And he said, "Maybe you should talk to your husband about

```
 1  that.  He" -- "He might have a different opinion."
 2         And I said, "Well, I don't really have to check with him
 3  because I don't know a lot but I know that that account is in
 4  my name and Jerry can't get funds and you can't get to it
 5  without me and it's never going to happen."
 6         And so he said he would have -- he would probably have
 7  somebody else call me and see if I could be convinced.  And I
 8  said, "It would be a waste of your time.  I'm not doing it."
 9  So that was the last time I spoke to him.
10  Q      Jerry is your husband?
11  A      Yes.  Sorry.  Yes.
12  Q      However --
13  A      However.
14  Q      Did Jerry win out?
15  A      Yes, he did.
16  Q      And you invested more money?
17  A      Yes, we did.
18  Q      If you could take a look at Government's Exhibit 105 for
19  identification.
20             THE WITNESS:  It would be in here?
21             THE COURTROOM DEPUTY:  Yeah.
22         Exhibit 105 is identified and placed before the witness.
23             (Exhibit 105 for identification.)
24  BY MS. LINDSAY:
25  Q      Is that your third check?
```

A     Yes, it is.

          MS. LINDSAY:  I'd move that into evidence, Your Honor.

          MS. AMES:  No objection.

          MR. EMMICK:  No objection.

          THE COURT:  In evidence.

          (Exhibit 105 received into evidence.)

          MS. LINDSAY:  And if we could just take a look at it.

BY MS. LINDSAY:

Q     The check is dated July 8th of 2009.  Is that about when you sent it in?

A     Yes.

Q     Did you send it by mail or FedEx?

A     I don't recall.  Jerry sent it in, but I don't recall if it went FedEx or through the mail.

Q     But one of the two?

A     Yes.

Q     And if you could look at Government's Exhibit 106 for identification.

          THE COURTROOM DEPUTY:  Exhibit 106 is identified and placed before the witness.

          (Exhibit 106 for identification.)

BY MS. LINDSAY:

Q     Are those stock certificates you received from GigaPix and

```
 1   OZ3D?
 2   A     Yes, it is.
 3            MS. LINDSAY:  I move that in, Your Honor.
 4            MR. EMMICK:  No objection.
 5            THE COURT:  105 -- 106 in evidence.
 6            (Exhibit 106 received into evidence.)
 7   BY MS. LINDSAY:
 8   Q     And if we could look at page 2 of that exhibit.  And if
 9   you could just make the whole thing -- okay.
10         And it's dated August 5th, 2009.  Is that about when you
11   received it?
12   A     Yes.
13   Q     Did you receive that in the mail?
14   A     Yes.
15   Q     And then showing you what's been marked for identification
16   as Government's Exhibit 107 and ask if you recognize that.
17            THE COURTROOM DEPUTY:  Exhibit 107 is identified and
18   placed before the witness.
19            (Exhibit 107 for identification.)
20            MS. AMES:  No objection.
21            MR. EMMICK:  No objection.
22   BY MS. LINDSAY:
23   Q     Is that additional stock certificates?
24   A     Yes, it is.
25            MS. LINDSAY:  And I move that in, Your Honor.
```

1  Your Honor, I move in Exhibit 107.
2              THE COURT:  107, any objection?
3              MS. AMES:  No objection.
4              MR. EMMICK:  No, Your Honor.
5              THE COURT:  Received in evidence.
6              (Exhibit 107 received into evidence.)
7  BY MS. LINDSAY:
8  Q    Over the years, did you receive update letters from
9  GigaPix?
10 A    Yes, we did.
11 Q    And if you could take a look at what's been marked for
12 identification as Government's Exhibit 108 and ask if you
13 recognize that.
14             THE COURTROOM DEPUTY:  Exhibit 108 is identified and
15 placed before the witness.
16             (Exhibit 108 for identification.)
17 BY MS. LINDSAY:
18 Q    Are those copies of the letters you received from GigaPix?
19 A    Yes.
20             MS. LINDSAY:  And I move in 108.
21             THE COURT:  Any objection?  108 in evidence.
22             (Exhibit 108 received into evidence.)
23 BY MS. LINDSAY:
24 Q    Now, you said that Mr. Pusateri told you in 2008 that you
25 would receive a return within one year.  Did you?

**UNITED STATES DISTRICT COURT**

1  A    No.

2  Q    Did you ever -- did it ever become difficult to reach
3  Mr. Pusateri?

4  A    Yes, it did.

5  Q    Were you able to talk to Mr. Pusateri or anyone else at
6  GigaPix about your concerns?

7  A    Um, after the last man went in and -- our little group of
8  investors, we were talking it over, and we would call him and
9  he would assure us that we'd be seeing something within
10 probably the next three months.  And then, of course, nothing
11 happened and we'd get the same response repeatedly.  And then
12 finally we were eventually not able to get ahold of anyone.

13 Q    How much in all did you put into GigaPix and *OZ3D*?

14 A    $25,000.

15 Q    Did you lose it all?

16 A    We did.

17         MS. LINDSAY:  Thank you, Your Honor.  I have nothing
18 further.

19         THE COURT:  Cross-examination, Defendant Pritchard.

20         MR. EMMICK:  No cross-examination, sir.

21         THE COURT:  Cross-examination, Defendant Blauvelt.

22                        **CROSS-EXAMINATION**

23 BY MS. AMES:

24 Q    Just one question, ma'am.  You never talked with
25 Mr. Christopher Blauvelt; is that correct?

**UNITED STATES DISTRICT COURT**

```
 1  A     With Christopher?  No.
 2              MS. AMES:  No further questions.
 3              THE COURT:  Redirect?
 4              MS. LINDSAY:  No, thank you.
 5              THE COURT:  You may step down.
 6              (Testimony of Linda Hampshire
 7               concluded at 11:46 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES   )
                        )
STATE OF CALIFORNIA     )

      I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

      DATED THIS 5TH DAY OF NOVEMBER, 2014.

      /S/ MYRA L. PONCE
_____
MYRA L. PONCE, CSR NO. 11544, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER